OPINION
Appellant Jeremy Johnson appeals his conviction, in the Muskingum County Court of Common Pleas, for one count of possession of drugs and one count of improperly handling a firearm in a motor vehicle. The following facts give rise to this appeal. On January 17, 1999, Appellant Jeremy Johnson's vehicle became stuck in ice, snow and mud, at a boat ramp, in Dillon State Park. Chester Coleman, a seasonal park officer, received a call from the sheriff's office regarding appellant's vehicle. Ranger Coleman proceeded to the boat ramp where he observed appellant's vehicle. Ranger Coleman approached appellant's vehicle and asked him if he needed assistance. Appellant indicated that he did and Ranger Coleman called a park "4-by-4" officer to tow appellant's vehicle out of the snow. Ranger Coleman asked appellant for some identification, which appellant was unable to produce. However, appellant did supply Ranger Coleman with his name and social security number. Ranger Coleman checked appellant's social security number with the Muskingum County Sheriff's Department and learned that appellant's driving privileges had been suspended. Ranger Coleman informed appellant of this and appellant indicated that he was aware of the suspension. Because of the suspension, Ranger Coleman placed appellant under arrest for driving under suspension. Ranger Coleman determined that the vehicle appellant was driving was registered to Amanda Moore. Because Moore could not be contacted, Ranger Coleman informed appellant that he had to inventory and tow the vehicle. While appellant was looking for the vehicle's registration in the glove box, Ranger Coleman noticed a large amount of loose ammunition. During the inventory search, Ranger Coleman discovered ammunition throughout the interior of the vehicle. Ranger Coleman also discovered a black bag in the trunk of the vehicle, which he opened. The bag contained a large amount of marihuana, loose ammunition, and a loaded nine millimeter handgun. Following the discovery of the marihuana, Ranger Coleman removed appellant from the back of his cruiser and conducted a pat-down search of appellant's person. During the search, Ranger Coleman found approximately $1,063 in appellant's front pant's pocket. Thereafter, Ranger Coleman again advised appellant that he was under arrest and read appellant his rights. The Muskingum County Grand Jury indicted appellant on January 27, 1999, for one count of possession of drugs and one count of improperly handling a firearm in a motor vehicle. Appellant filed a motion to suppress evidence obtained from the inventory search of his vehicle on September 22, 1999. On November 9, 1999, the trial court overruled appellant's motion. Appellant waived his right to a jury trial and this matter proceeded as a trial to the bench on February 8, 2000. The trial court found appellant guilty as charged in the indictment and sentenced him to concurrent terms of ten months. Appellant filed a motion for new trial on February 16, 2000, which the trial court overruled on March 6, 2000. Appellant timely filed a notice of appeal and sets forth the following assignments of error for our consideration:
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN ITS DENIAL OF A MOTION FOR NEW TRIAL.
 II. THE TRIAL COURT ERRED IN ITS DENIAL OF A MOTION TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF THE WARRANTLESS, UNCONSTITUTIONAL DETENTION OF MR. JOHNSON BY THE INVESTIGATING OFFICER.
 III. MR. JOHNSON'S RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WERE VIOLATED AS HIS CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE.
 IV. THE ADMISSION OF EVIDENCE OF MR. JOHNSON'S POST-ARREST SILENCE WAS IN VIOLATION OF HIS CONSTITUTIONAL RIGHT TO BE FREE FROM SELF-INCRIMINATION.
 II
We will address appellant's Second Assignment of Error first as we find it dispositive of this matter on appeal. Appellant contends, in this assignment of error, that the evidence recovered from the vehicle should have been suppressed because Ranger Coleman discovered it during a warrantless, unconstitutional detention of appellant. We agree that the trial court should have granted appellant's motion to suppress, in part, but do so on different grounds. On appeal, appellant does not allege that the trial court's findings of fact, pertaining to the motion to suppress, are against the manifest weight of the evidence. Nor does appellant contend that the trial court failed to apply the appropriate test or correct law. Instead, appellant maintains the trial court incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of argument, we must independently determine, without deference to the trial court's decision, whether the facts meet the appropriate standard in any give case. State v. Curry (1994), 95 Ohio App.3d 93, 96; State v. Claytor (1993), 85 Ohio App.3d 623, 627; and State v. Guysinger (1993), 86 Ohio App.3d 592, 594. It is based on this standard that we review appellant's Second Assignment of Error. In Florida v. Royer (1982), 460 U.S. 491, the United States Supreme Court identified three categories of police-citizen contact used to determine whether the guarantees of the Fourth Amendment are implicated. The first category is a consensual encounter. "A police officer may lawfully initiate a consensual encounter without probable cause or a reasonable, articulable suspicion that an individual is currently engaged in criminal activity or is about to engage in such conduct." State v. Guinn (June 1, 2000), Franklin App. No. 99AP-630, unreported, at 5, citing United States v. Mendenhall (1980), 446 U.S. 544, 556. This type of encounter occurs when a police officer approaches an individual in a public place, engages the person in conversation or requests information, and the person remains free not to answer and walk away. Id. at 5, citing 446 U.S. at 553. An officer's request to examine a person's identification does not make the encounter nonconsensual. Guinn at 5, citing Florida v. Bostick (1991), 501 U.S. 429. In consensual encounters, Fourth Amendment guarantees are not implicated unless the officer uses physical force or a show of authority that restrains the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter. Guinn at 5, citing Mendenhall at 554. The second type of encounter is an investigatory stop. This type of stop is limited in duration and purpose and may only last as long as it takes the officer to confirm or to dispel his suspicions that an individual is, or is about to be, engaged in criminal activity. Guinn at 5, citing Terry v. Ohio (1968), 392 U.S. 1. An investigatory stop constitutes a "seizure" for purposes of theFourth Amendment. Guinn at 5, citing Terry at 16. The third type of encounter is the formal custodial arrest. In State v. Darrah (1980), 64 Ohio St.2d 22, 26, the Ohio Supreme Court explained that an "arrest" occurs when: (1) there was an intent to arrest; (2) under real or pretended authority; (3) accompanied by an actual or constructive detention; (4) which is so understood by the person arrested. In the case sub judice, we find Ranger Coleman's initial contact with appellant constituted a consensual encounter. However, this encounter subsequently resulted in a formal custodial arrest. Appellant contends that his continued detention by Ranger Coleman, after his vehicle was pulled from the snow, was unconstitutional and therefore any evidence found after this illegal detention should have been suppressed by the trial court. Our concern focuses not on appellant's continued detention but the inventory search conducted by Ranger Coleman. "Inventory searches are a `well-defined exception to the warrant requirement of the Fourth Amendment.'" State v. Mesa (1999), 87 Ohio St.3d 105,108, citing Colorado v. Bertine (1987), 479 U.S. 367, 371. Inventory searches are administrative in nature and protect an individual's property while it is in police custody, protect police against claims of lost, stolen or vandalized property and protect police from dangerous instrumentalities. Mesa at 109, citing South Dakota v. Opperman (1976), 428 U.S. 364, 369. Due to the administrative nature of inventory searches, the policies underlying the Fourth Amendment warrant requirement, including the standard of probable cause, are not implicated. Mesa at 109, citing Opperman at 370. In State v. Hathman (1992), 65 Ohio St.3d 403, the Ohio Supreme Court set forth the constitutional requirements for inventory searches based on various United States Supreme Court cases. The Court held as follows: 1. To satisfy the requirements of the Fourth Amendment to the United States Constitution, an inventory search of a lawfully impounded vehicle must be conducted in good faith and in accordance with reasonable standardized procedure(s) or established routine. [Citations omitted.]
2. If, during a valid inventory search of a lawfully impounded vehicle, a law-enforcement official discovers a closed container, the container may only be opened as part of the inventory process if there is in existence a standardized policy or practice specifically governing the opening of such containers. [Citations omitted.] Id., at paragraphs one and two of the syllabus.
In Hathman, during an inventory search by the Ohio State Highway Patrol, a patrolman opened and searched the trunk of the defendant's vehicle. Id. at 404. The patrolman found a plastic bag containing smaller bags and a pill bottle. Id. The patrolman opened these containers and found contraband. Id. The Court explained that the search of a trunk is reasonable because the trunk is part of a vehicle normally included in the scope of an inventory search. Mesa at 333, citing Opperman at 372. However, the Court concluded that the evidence discovered in the containers should be suppressed because "* * * the existence of a reasonable policy or procedure governing inventory searches in general is insufficient to justify the opening of closed containers encountered during the inventory search. Rather, some articulated policy must also exist which regulates the opening of containers found during the authorized inventory search." Hathman at 408. We have reviewed the transcript of the suppression hearing in this matter and find no mention of the park ranger's standardized policy or practice specifically concerning the opening of closed containers during an inventory search of a vehicle. Having failed to establish whether such a policy even exists, we conclude the trial court should have granted appellant's motion to suppress as it pertains to the search of the black bag found in the trunk of the vehicle. The trial court properly denied the motion to suppress as to the ammunition found in the glove box and throughout the interior of the vehicle because areas of an automobile normally part of an inventory search are the "* * * interior, trunk, glove box, etc." Mesa at 333. Appellant's Second Assignment of Error is affirmed in part and reversed in part.
We will not address appellant's First, Third and Fourth Assignments of Error as we find them moot based on our disposition of appellant's Second Assignment of Error. For the foregoing reasons, the judgment of the Court of Common Pleas, Muskingum County, Ohio, is hereby affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.